UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-340-H

GREG DILLARD AND JEFF SIMMONS                                         PLAINTIFFS

V.

MARATHON ASHLAND PETROLEUM LLC                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs, Greg Dillard and Jeff Simmons, initially filed this state law retaliation claim in

Jefferson Circuit Court.  Defendant, Marathon Ashland Petroleum LLC, timely removed to

federal court on the grounds of diversity.  In the complaint, Plaintiffs alleged that they reported

certain unsafe and illegal activities occurring at Defendant's Louisville terminal.  As a

consequence of making these reports and in retaliation against them for making these reports,

Plaintiffs allege that Defendant's management became angry and hostile, created a hostile and

adverse working environment, sought to transfer or remove them from their employment and

shunned and ostracized Plaintiffs.  Plaintiffs allege that they have suffered emotional distress and

mental anguish as a result of Defendant's outrageous conduct.  Soon after removal to federal

court, Defendant moved to dismiss on the grounds that Plaintiffs have not stated a proper cause

of action under state law.

I.

Plaintiff Dillard has worked for Defendant for four years.  Plaintiff Simmons has worked

for Defendant for 18 years.  Dillard is a facility security officer and is generally charged with

ensuring the safety of other workers.  Simmons works on the river dock unloading oil and other petroleum products from barges.

In the fall of 2003, Dillard informed Defendant's management of various allegedly dangerous and wrongful activities of co-workers, including but not limited to the illegal use of cell phones, smoking while barges were being unloaded and leaving barges unattended.  If true, these activities would violate a number of state statutes and regulations as well as Defendant's internal safety policies.  Dillard asked management to enforce its company's policies as well as state and federal regulations prohibiting these activities.  According to Plaintiffs, Defendant took no action.  In the fall of 2000, Dillard and Simmons gathered additional evidence regarding the alleged safety violations.  Together they videotaped employees leaving the barges unattended, smoking and using unauthorized cell phones near fuel and submitted the videotape to Defendant's internal "integrity hot line."

After hearing nothing, Dillard followed up on his complaints.  In January, 2005, according to Plaintiffs, Defendant had still taken no action to stop the alleged wrongful activities.  Dillard and Simmons followed up several times over the next few months.  Although Defendant acknowledged receiving the videotape, it took no action which satisfied Plaintiffs.

Thereafter, Dillard and Simmons allege that Defendant's management retaliated against them in a variety of ways.  Dillard and Simmons say that management incited employees at the Louisville terminal to threaten Plaintiffs with physical harm, vandalized their personal property, ostracized and intimidated them.  They also allege Defendant attempted to transfer them out of the country.  Finally, Defendant assigned Plaintiffs new and more onerously duties and denied them benefits that they previously had enjoyed.  Both Dillard and Simmons have remained in

their same job, with no change in status or compensation.

II.

The initial question raised is whether common law retaliation claim exists under Kentucky law. Citing *Ghassomians v. Ashland Ind. School Dist.*, 55 F. Supp. 2d 675, 694 (E.D. Ky. 1998) and *Boykins v. Housing Authority of Louisville,* 842 S.W.2d 527 (Ky. 1992), Defendant says that no such right of action exists. Plaintiffs responded their claim is one for unlawful retaliation for failure or refusal to participate in illegal activity and is in fact sanctioned by *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790 (Ky. 2004) and *Northeast Health Management, Inc. v. Cotton*, 56 S.W.3d 440 (Ky. Ct. App. 2001).

This Court can find no Kentucky case authorizing a common law cause of action for retaliation. To be sure, the Kentucky legislature has passed several statutes creating statutory retaliation claims: one protecting whistle blowers, Ky. Rev. Stat. § 61.102, another protecting those making claims under the Kentucky Occupational Safety and Health Act ("KOSHA"), Ky. Rev. Stat. § 338.121(3)(b), and another protecting those making claims under the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. § 344.280(1). However, Plaintiffs neither allege claims under those statutes nor allege any facts sufficient to state such claims.

The two cases that Plaintiffs cite do not support their common law retaliation claim. *Brooks* concerns a claim for racial discrimination and retaliation for making that claim under KRS 344.280(1). Clearly that case is inapplicable because Plaintiffs do not allege that they were retaliated against for asserting a claim of unlawful discrimination. The *Northeast* case concerns a claim for wrongful discharge, which is entirely distinct from the one that Plaintiffs are asserting and is inapplicable to this case for reasons explained below.

3

In sum, the Court finds no evidence in the case law or elsewhere that Kentucky courts would likely create a new cause of action for retaliation generally or on the work site. This view is consistent with the holding of at least one other federal court in Kentucky. *See*, *Ghassomians*, 55 F. Supp. 2d at 694 ("Kentucky has no common law retaliation right of action"). Therefore, this Court will decline to create a common law cause of action for retaliation in the workplace. *See Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 694 (1st Cir. 1984) (federal courts sitting in a diversity case are in "a particularly poor position . . . to endorse [a] fundamental policy innovation. . . . Absent some authoritative signal from the legislature of the courts of [the state], we see no basis for even considering the pros and cons of innovative theories . . . .").

The most analogous cause of action to Plaintiffs' case, which is recognized by the common law of Kentucky, is a claim for wrongful discharge. To assert a claim for wrongful discharge, the "minimum" burden on a plaintiff is to provide evidence that he: (1) "engaged in statutorily protected activity;" (2) was discharged; and (3) "there was a causal connection between the protected activity and the discharge." *Willoughby v. GenCorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App.1990); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (6th Cir. 2001).

Arguably, Plaintiffs have engaged in statutorily protected activity by notifying their superiors of dangerous activity on the workplace. *See Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, 666 S.W.2d 730, 733 (Ky. 1983) (holding that the plaintiff could assert a wrongful discharge claim when the reason for the discharge was "a right implicit in a statute"). However, Plaintiffs' claim fails because they do not allege either discharge or constructive discharge. Instead, Plaintiffs concede that despite their uncomfortable working conditions, they have remained on the job. Therefore, although Plaintiffs may have been entitled

4

to relief under a statutory retaliation claim, he is not entitled to relief under the wrongful

discharge doctrine.  To make a claim for constructive discharge, one must have actually left

employment under duress.  That has not occurred here.

 The essence of Plaintiffs' complaints is that they reported illegal activities and refused to

overlook them.  They say that, in retaliation, Defendant made their lives miserable on the job.

The Court cannot speculate as to whether Plaintiffs have a claim under KOSHA because

Plaintiffs have not asserted such a claim.  Plaintiffs have no retaliation claim under KCRA and

there is no common law claim for retaliation recognized under Kentucky law, with the exception

of a wrongful discharge claim. The wrongful discharge claim does not apply to the facts of this

case because it arises only where an employee is terminated either directly or constructively.

III.

 Plaintiffs remaining claim is one for outrage, emotional distress and mental anguish

under state law.  Kentucky has recognized a cause of action for outrageous conduct causing

emotional injury or severe mental anguish.  *See Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984);

*Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).  Kentucky has followed the general

description found in the Restatement (Second) of Torts, § 46 (1965).  Comment (d) to that

section defines such conduct:

> "It has not been enough that the defendant has acted with an intent
> which is tortious . . ., or that he has intended to inflict emotional
> distress, or even that his conduct has been characterized by
> 'malice' . . . .  Liability has been found where the conduct has been
> so outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community.
> Generally, the case is one in which recitation of the facts to an
> average member of the community would arouse his resentment
> against the actor, and lead him to exclaim, 'outrageous!'  The

5

> liability clearly does not extend to mere insults, indignities, threats,
> annoyances, petty oppression, or other trivialities."

Restatement (Second) of Torts, § 46 cmt. D.  Kentucky courts generally seem to have taken a
very restrictive view of the tort.

Dillard's affidavit is short on specifics and Simmons has filed none at all.  They should
be aware of the actions which directly affected each of them.  Nevertheless, this case cannot
proceed on a claim of outrage unless Plaintiffs can assert under oath specific acts directed toward
each of them and specific emotional distress or anguish resulting from those actions.  Later
discovery might be necessary to determine whether any alleged acts were undertaken
intentionally or at Defendant's instigation.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record